**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SARA HAWES and CLARICE CHAVIRA, individually and on behalf of all others similarly situated, | No. 15-cv-308 |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| ABBOTT LABORATORIES, INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Sarah Hawes and Clarice Chavira bring this Class Action Complaint against Defendant Abbott Laboratories, Inc. ("Abbott"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I. NATURE OF THE ACTION

1. This is a civil class action brought individually by Plaintiffs and on behalf of all persons in the below-defined proposed putative Classes ("Class Members") who purchased the ready-to-drink protein products EAS Myoplex Original and EAS AdvantEdge Carb Control (the "Products"), which were manufactured, advertised, and distributed by Defendant.

2. The protein industry is a growing and extremely competitive business environment: "during the forecast period, [the market for] protein products is expected to grow by 62% to reach US$7.8 billion in 2018."[1]

3. Food and dietary supplement companies have been including protein in their products that are targeted at all age groups and lifestyles, including people engaged in fitness, as part of a weight loss program, and protein supplementation for aging adults.

4. Protein is an important component of every cell in the body. Hair and nails are mostly made of protein. The body uses protein to build and repair tissues, and also to make enzymes, hormones, and other biochemical substances. Protein is an important building block of bones, muscles, cartilage, skin, and blood.

5. Abbott designed, manufactured, warranted, advertised and sold the Products throughout the United States, including in the State of California.

6. In an effort to reduce manufacturing costs, Abbott significantly reduced the protein content of the Products, as compared to the label claims.

7. As a result of Defendant's practices, consumers – including Plaintiffs and the Class Members defined below – received a product that contains less protein than Defendant represented.

8. Despite the knowledge that the mislabeling of the Products is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Products in a misleading and deceptive manner.

---

[1] *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report (last visited October 30, 2014).

## II. JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Defendant's States of citizenship, as detailed below.

10. The Products are sold through numerous different online and brick/mortar retailers, including Wal-Mart, CVS, Walgreens, Target and Vitamin Shoppe. There are likely tens of thousands of class members composing the proposed classes with tens of millions of dollars spent on the Products due to the far reaching distribution channels and high consumer demand for protein products.

11. This Court has personal jurisdiction over Defendant because Abbott's principal place of business is in the State of Illinois and Abbott conducts substantial business in the State of Illinois. Defendant has significant continuous and pervasive contacts with the State of Illinois.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

## III. PARTIES

***Plaintiffs***

13. During the Class period, Plaintiff Sara Hawes, a California resident, and the other members of the below-defined Classes purchased the Product EAS Myoplex Original through the Vitamin Shoppe and numerous other brick and mortar and online retail stores.

14. During the Class period, Plaintiff Clarice Chavira, a California resident, and the other members of the below-defined Classes purchased the Product EAS AdvantEdge Carb Control through Target and numerous other brick and mortar and online retail stores.

***Defendant***

15. Abbott Laboratories, Inc. is licensed in the State of Illinois, with a principal place of business address at 100 Abbott Park Road, Abbott Park, Illinois 60064-3500.

## IV. FACTUAL BACKGROUND

***Defendant's Misleading Labeling of EAS Myoplex Original***

16. The EAS Myoplex Original product label states plainly "42g Protein" on the front of the packaging, and indicates that that there are 42 grams of protein per serving in the Nutrition Facts section:






**Nutrition Facts**
Serving Size 17 fl oz (500 mL)
Servings Per Container 4

**Amount Per Serving**
**Calories** 300 Calories from Fat 60

| | % Daily Value* |
|---|---|
| **Total Fat** 7 g | **11%** |
| Saturated Fat 1.5 g | **8%** |
| *Trans* Fat 0 g | |
| Polyunsaturated Fat 0 g | |
| Monounsaturated Fat 0 g | |
| **Cholesterol** 25 mg | **8%** |
| **Sodium** 600 mg | **25%** |
| **Potassium** 1050 mg | **30%** |
| **Total Carbohydrate** 20 g | **7%** |
| Dietary Fiber 3 g | **12%** |
| Sugars 1 g | |
| **Protein** 42 g | **84%** |

| | | | |
|---|---|---|---|
| Vitamin A | 40% | Vitamin C | 100% |
| Calcium | 90% | Iron | 40% |
| Vitamin D | 50% | Vitamin E | 100% |
| Vitamin K | 50% | Thiamin | 50% |
| Riboflavin | 60% | Niacin | 50% |
| Vitamin $B_6$ | 50% | Folate | 90% |
| Vitamin $B_{12}$ | 50% | Biotin | 50% |
| Pantothenic Acid | 50% | Phosphorus | 70% |
| Iodine | 50% | Magnesium | 20% |
| Zinc | 70% | Selenium | 60% |
| Copper | 15% | Manganese | 40% |
| Chromium | 80% | Molybdenum | 50% |
| Chloride | 8% | | |

*Percent Daily Values are based on a 2,000 calorie diet.

17. According to scientific testing of the EAS Myoplex Original product, the actual total content per serving of protein is approximately 38.085 grams as opposed to 42 grams of protein claimed by Defendant. *See* Exhibit A.

***Defendant's Misleading Labeling of EAS AdvantEdge Carb Control***

18. The EAS AdvantEdge Carb Control product label states plainly "17g Protein" on the front, and indicates that that there are 17 grams of protein per serving in the Nutrition Facts section:



# Nutrition Facts

Serving Size 1 bar (60.0 g)

| **Amount Per Serving** | |
|---|---|
| **Calories** 240 | Calories from Fat 72 |
| | **% Daily Value*** |
| **Total Fat** 8.0g | **12%** |
| Saturated Fat 4.5g | **23%** |
| *Trans* Fat 0.0g | |
| **Cholesterol** -5mg | **-2%** |
| **Sodium** 350mg | **15%** |
| **Total Carbohydrates** 27.0g | **9%** |
| Dietary Fiber 6.0g | **24%** |
| Sugars 1.0g | |
| **Protein** 17.0g | |
| Vitamin A 30% • | Vitamin C 30% |
| Calcium 35% • | Iron 30% |

* Based on a 2000 calorie diet

19. According to scientific testing of the EAS AdvantEdge Carb Control product, the actual total content per serving of protein is approximately 14.164 grams as opposed to 17 grams of protein claimed by Defendant. *See* Exhibit B.

20. Plaintiffs and Class Members were in fact misled by Defendant's representations regarding the true nature of the protein content and value.

21. The difference between the Products promised and the Products sold is significant. The amount of actual protein provided, and the measure of protein per serving, has real impacts on the benefits provided to consumers by the Products, and the actual value of the Products.

22. Persons requiring a certain amount of protein supplementation, whether as part of fitness regimen or for real health needs, are left to ingest less protein than Defendant states will be provided.

23. Defendant's false and misleading claims contained herein are in violation of 21 C.F.R. § 101.18(b), making the Products misbranded.

24. Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular".

25. California prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Law", Health & Saf. Code § 109875 *et seq*. The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id.*

26. The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

27. Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

28. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

29. Plaintiffs and Class Members would have purchased another protein product, if any at all, or would have only paid for the protein actually delivered with the Product, had they not been deceived by the misleading labeling of the Products by Defendant.

## V. CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23 F.R.C.P. on behalf of the below-defined Classes:

> **National Class:** All persons in the United States who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.[2]

[2] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

> **California Subclass:** All persons in the State of California who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

31. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

32. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

33. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a. The true nature of the protein content in the Products;

b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c. Whether Defendant's actions violate the State consumer fraud statutes invoked below;

    d. Whether Defendants' actions violate California's law against false advertising, Business and Professions Code §17500, *et seq*.;

e. Whether Defendant's actions violate California's Consumer Legal Protection Act, Civil Code §1750, *et seq*.;

f. Whether Defendant was Unjustly Enriched at the expense of the Plaintiffs and Class Members; and

g. Whether Defendant violated an Express Warranty to Plaintiffs and Class Members.

34. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

35. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

36. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

37. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

38. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

39. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
### Violation of the Consumer Legal Remedies Act
### Cal. Civ. Code §1750, *et. seq.*
### (On Behalf of the California Subclass Members)

40. Plaintiffs Hawes and Chavira incorporate all previous factual allegations as if fully set forth herein.

41. Plaintiffs Hawes and Chavira and each member of the California Subclass is a "Consumer" as that term is defined by Cal. Civ. Code § 1761(d).

42. The Product is a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

43. Defendant is a "Person" as defined by Cal. Civ. Code § 1761(c).

44. The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code § 1761(e).

45. Plaintiffs Hawes and Chavira and the members of the California Subclass are Consumers who purchased the Product for personal use within the applicable statute of limitations period.

46. Plaintiffs Hawes and Chavira and the members of the California Subclass have standing to pursue this cause of action because they have suffered injury-in-fact and have lost money or property as a result of Defendant's actions as set forth here.

47. Plaintiffs Hawes and Chavira and the members of the California Subclass purchased the Products in reliance on Defendant's labeling and marketing claims.

48. Defendant has used deceptive representations with respect to the Products in violation of Cal. Civ. Code §1770(a)(4).

49. Defendant has misrepresented the sponsorship, approval, characteristics, or ingredients of the Products in violation of Cal. Civ. Code §1770(a)(5).

50. Defendant has misrepresented the standard, quality, or grade of the Products in violation of Cal. Civ. Code §1770(a)(7).

51. Defendant knew or should have known that their representations of fact are material and likely to mislead consumers.

52. Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Plaintiffs Hawes and Chavira and the members of the California Subclass would not have purchased the Products had they known the true amount of protein in the Products

53. Plaintiffs Hawes and Chavira and the members of the California Subclass have been directly and proximately damaged by Defendant's actions.

54. In conjunction with filing this Complaint, Plaintiffs' Counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code §1782(a). Should Defendant fail to respond within thirty days, Plaintiffs will amend to seek damages under the Consumer Legal Remedies Act.

55. Defendant has engaged in, and continue to engage in, business practices in violation of the Consumer Legal Remedies Act, Civ. Code §1750, et seq. by continuing to make false and misleading representations on their labeling of the Products.

56. These business practices are misleading and/or likely to mislead Consumers and should be enjoined.

**COUNT II**
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of the California Subclass Members)**

57. Plaintiffs Hawes and Chavira incorporate all previous factual allegations as if fully set forth herein.

58. Plaintiffs Hawes and Chavira and the members of the California Subclass have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §17500, et seq. because they have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

59. Defendant advertised, marketed, and otherwise disseminated misleading information to the public through advertising mediums including the label statements regarding the Products.

60. Defendant continues to disseminate such statements.

61. Defendant's statements are misleading.

62. Defendant knows that these statements were misleading, or could have discovered their misleading nature with the exercise of reasonable care.

63. Defendant's misleading statements were part of a scheme or plan not to sell the Products to the public with the protein content as published on the Product labels.

64. Plaintiffs Hawes and Chavira and the members of the California Subclass relied on Defendant's marketing and labeling.

65. Defendant's actions violate Cal. Bus. & Prof. Code § 17500, et seq.

66. As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from

Plaintiffs Hawes and Chavira and the members of the California Subclass who paid for the Products. Therefore, Defendant has been unjustly enriched.

67. Plaintiffs Hawes and Chavira and the members of the California Subclass seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains as provided for by Cal. Bus. & Prof. Code §17535.

68. Plaintiffs Hawes and Chavira and the members of the California Subclass seek injunctive relief to compel Defendant from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and Class members will suffer irreparable harm and/or injury.

**COUNT III**
**Violation of the Unfair Competition Act**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(In the alternative to Count III and on behalf of the California Subclass)**

69. Plaintiffs Hawes and Chavira incorporate all preceding factual allegations as if fully set forth herein.

70. Plaintiffs Hawes and Chavira and the California Subclass have standing to pursue a cause of action for false advertising under Bus & Prof. Code §17200, et seq. because Plaintiff and members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

71. Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code §17200, in that Defendant has engaged in unlawful, unfair, or fraudulent business practices by violating California's Sherman Food Drug & Cosmetic Act and California's Consumer Legal Remedies Act.

72. Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code §17200, on the additional grounds that Defendant has failed to properly label the Product in accordance with 21 C.F.R. 101, et seq.

73. Defendant's actions also constitute unfair competition within the meaning of Bus. & Prof. Code §17200, in that Defendant has made unfair, deceptive, untrue or misleading statements in advertising mediums, including the Internet, in violation of Bus. & Prof. Code §17500.

74. Defendant's actions have caused economic injury to Plaintiffs Hawes and Chavira and California Subclass members. Plaintiffs and Class members would not have purchased the Products had they known the true nature of the protein content.

75. Pursuant to Bus. & Prof. Code §17203, Plaintiff Hawes and Chavira and the California Subclass seek an injunction enjoining Defendant from continuing to market, advertise, and sell the Products without first complying with federal and state law and to prevent Defendant from continuing to engage in unfair competition or any other act prohibited by law.

76. Plaintiffs Hawes and Chavira and the California Subclass also seek an order requiring Defendant to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff and Class members as permitted by Bus. & Prof. Code §17203.

**COUNT IV**
**Violation of State Consumer Fraud Acts**
**(On Behalf of the Multi-State Class)**

77. Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

78. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[3] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

79. Defendant intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

80. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

81. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of the National Class)**

82. Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

83. Plaintiffs and the other members of the National Class conferred benefits on Defendant by purchasing the Products.

84. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the other members of the National Class' purchase of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the National Class because they would have not purchased the Products had they known the true facts.

---

[3] California (Cal. Bus. & Prof. Code §17200, *et seq*.); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. 502/1, *et seq*.); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325F.67, *et seq*.); Missouri (Mo. Rev. Stat. 010, *et seq*.); New Jersey (N.J. Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §349, *et seq*.); and Washington (Wash. Rev. Code §19.86.010, *et seq*.).

85. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the National Class for their unjust enrichment, as ordered by the Court.

**COUNT VI**
**Breach of Express Warranty**
**(On Behalf of the National Class)**

86. Plaintiffs incorporates all preceding factual allegations as if fully set forth herein.

87. Plaintiffs, and each member of the National Class, formed a contract with Defendant at the time Plaintiffs and the other National Class members purchased the Products. The terms of the contract includes the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiffs and the members of the National Class and Defendant.

88. Defendants purport through its advertising, labeling, marketing and packaging to create an express warranty that the Products contain a specific amount of protein.

89. Plaintiffs and the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

90. Defendant breached express warranties about the Products and its qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises described above.

91. Plaintiffs and each of the members of the National Class would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products contained.

92. As a result of Defendant's breach of warranty, Plaintiffs and each of the members of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this complaint so triable.

## IX. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representative and appointing the undersigned counsel as Class Counsel for the Classes;

B. Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Classes;

C. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Classes;

D. Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiffs and the other members of the Classes;

E. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

F. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

G. Ordering Defendant to change its labels to state the correct amount of protein content and to conduct corrective advertising;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Ordering such other and further relief as may be just and proper.

Dated: January 13, 2015

Respectfully submitted,

*/s/ Joseph J. Siprut*
Joseph J. Siprut
*jsiprut@siprut.com*
Gregory W. Jones
*gjones@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.267.1906
www.siprut.com

Nick Suciu III*
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine
Suite 101
Detroit, Michigan 48201
313.303.3472

Tina Wolfson*
*twolfson@ahdootwolfson.com*
Bradley King*
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
310.474.9111
Fax: 310.474.8585

***Counsel for Plaintiffs***
***And the Proposed Putative Classes***

* *Pro Hac Vice* Application Forthcoming